# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LEROY C. BEHRENS, | ) | |
| | ) | |
| Plaintiff, | ) | 16- cv-5348 |
| | ) | |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Leroy C. Behrens ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his disability insurance benefits under Title II of the Social Security Act. The parties have filed cross-motions for summary judgment. For the reasons discussed more fully below, the Court remands this matter for further proceedings consistent with this opinion. Plaintiff's Motion to Reverse the Final Decision of the Commissioner of Social Security (dkt. 15) is granted as stated herein. The Commissioner's Motion for Summary Judgment (dkt. 22) is denied.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on October 17, 2012, with an alleged onset date of disability of October 15, 2012. (Record ("R.") 21, 334.) Plaintiff was last insured for disability insurance benefits on December 31, 2017. (R. 23.) Therefore, to obtain benefits, Plaintiff would have to establish disability onset on or before December 31, 2017.

During the application process for disability insurance benefits, the Plaintiff claimed he suffered from degenerative disc disease of the lumbar spine. *Id.* Plaintiff has not worked or engaged

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

1

in gainful employment since October 15, 2012. (*Id.*, Finding 2.)

The Plaintiff's initial request for disability benefits was denied on March 19, 2013, and again at the reconsideration stage on September 20, 2013. (R. 21.) Plaintiff timely requested an administrative hearing, which was held on October 14, 2014, before Administrative Law Judge ("ALJ") Lee Lewin. (R. 39.) At the Administrative Hearing, Plaintiff testified, as did a Medical Expert ("ME"), Ronald A. Semerdjian, and a Vocational Expert ("VE"), Jill Radke, OTR. (R. 39-90.) The Plaintiff represented himself at the Administrative Hearing, but later obtained counsel to assist him with his appeal. (R. 41-42, 195-96.)

On December 10, 2014, the ALJ issued a written decision finding Plaintiff not disabled within the meaning of the Act and denying the Plaintiff disability benefits. (R. 21-33.)

## II. FACTUAL BACKGROUND

### A. Plaintiff's Background and Medical History

Plaintiff is a male, born on May 6, 1957, and was 57 years old at the time of the Administrative Hearing. (R. 45.) Before Plaintiff's disability onset date, he worked in Charleston, IL as a meat slicer at a sandwich shop and as a sales associate at Walmart. (R. 78-79.) At the time of the Administrative Hearing, Plaintiff had moved in with his sister and her husband in Chicago, and Plaintiff helped out around the house doing chores, such as sweeping and washing the dishes. (R. 47, 51.) Plaintiff also worked 10 hours a week stocking shelves at a dollar store, and volunteered weekly at a food pantry helping customers carry items to their cars. (R. 51-53.) Plaintiff indicated his back condition caused problems with lifting, bending, prolonged standing, and prolonged sitting and that he was unable to find work due to his back condition. (R. 41-42; 56-57.) Plaintiff also testified that lack of job opportunities in Charleston prevented him from obtaining work, and that was one of the reasons he moved to Chicago. (R. 53-54.)

The medical records indicate Plaintiff first sought treatment for his illness on February 17,

2

2010. (R. 24, 440.) The Plaintiff sought emergency care after missing work for four to five weeks due to back pain. (R. 440.) The Plaintiff complained of discomfort in his left knee as well as pain in his back. *Id.* Dr. Shane Cline, the emergency room physician, prescribed the Plaintiff Naprosyn and Vicodin and recommended that Plaintiff follow up with a primary care provider. (R. 440-41.) A little over one month after this emergency visit, on March 22, 2010, Plaintiff sought chiropractic care and was diagnosed with lumbar subluxation, lumbar radiculitis, and muscle spasm. (R. 353-56.)

Nearly three years later, on March 12, 2013, Plaintiff underwent a consultative examination by Dr. Vittal V. Chapa, MD. (R. 357-59.) Plaintiff complained to Dr. Chapa of numbness in the left leg, and hip pain (at a 5 out of 10) if he stood for long periods of time, for which he took Tylenol to relieve the pain; Plaintiff reported he'd had these symptoms for 3 years. (R. 357.) Dr. Chapa's physical examination demonstrated no edema of the lower extremities and peripheral pulses were 3+ bilaterally. (R. 358.) Plaintiff's ankle reflexes were absent bilaterally and knee reflexes were 1+ bilaterally. *Id.* Although there was decreased pinprick sensation to the medial aspect of the left leg, there was no specific motor weakness or muscle atrophy. *Id.* An examination of the musculoskeletal system revealed no evidence of joint redness, heat, swelling or thickness. *Id.* There was no evidence of paravertebral muscle spasms, lubrosacral spine flexion was found to be normal, straight leg raising test was negative bilaterally, and motor strength was full (5/5) in both lower extremities. (R. 358-59.) Plaintiff had full range of motion of all joints, no difficulty getting on or off the exam table, and no difficulty with ambulation. (R. 359.) Dr. Chapa's diagnostic impression was chronic lumbosacral pain syndrome. *Id.*

Three months later, on June 11, 2013, Plaintiff saw Dr. Mark Emenecker, D.O., and was seeking a medical evaluation for a disability determination. (R. 377-80.) Plaintiff's pain was a 6/10 and Plaintiff claimed to have heard a pop in his back in 2009, causing chronic back pain ever since. (R. 377-78.) However, Plaintiff stated that after his 2010 chiropractic visit, he was not able to follow-

3

up with any medical treatment because of his lack of finances. (R. 378.) Dr. Emenecker's physical examination was essentially consistent with Dr. Chapa's consultative examination. (R. 25, 377-80.) The x-rays Dr. Emenecker took of Plaintiff's back at that visit showed "significant degenerative disc disease at the L4/L5 level" of his spine. (R. 379.) Ultimately, Dr. Emenecker' prescribed the Plaintiff Naproxen, Tramadol (for breakthrough pain), and stretching exercises. (R. 379-80.)

Dr. Emenecker saw the Plaintiff again on March 18, 2014. (R. 420.) Plaintiff told Dr. Emenecker that he had not seen a doctor since his prior June 11, 2013 visit with Dr. Emenecker, and that he had not taken the medications prescribed by Dr. Emenecker since August 2013. (R. 420-21.) At that time, Plaintiff reported no improvement in his back pain and expressed some concern about weight gain from less physical activity. (R. 420, 422.) Dr. Emenecker noted that Plaintiff did not appear to be in acute distress. (R. 422.) Plaintiff was able to stand from a seated position and walk to the examination table without difficulty; he had a somewhat exaggerated lumbar lordosis; there was minimal tenderness over the left sacroiliac joint region of the lumbar spine; rotation of the lumbar spine was relatively symmetric; there was increased discomfort with right rotation, but negative seated straight leg raising, no calf tenderness, and normal reflexes. *Id.* Dr. Emenecker recommended that Plaintiff undergo an MRI for further evaluation, and after an extended discussion about the benefits and potential outcomes of the test, as well as about Plaintiff's potential Medicaid eligibility, Plaintiff declined the MRI at that time. *Id.*

On May 7, 2014, Plaintiff finally underwent an MRI of the lumbar spine, which revealed L4-L5 acute on chronic disk degenerative changes with resulting moderate left and right neuroformainal stenosis at this level, but no evidence of spinal canal stenosis at any level. (R. 424.)

On June 17, 2014, Dr. Emenecker completed a medical source statement.[2] (R. 395-400.) In

---

[2] A medical source statement is a statement from a treating or examining physician opining as to what a claimant can do despite his impairments. *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014). A patient does not have to attend a doctor's visit concurrent with the physician filling out this statement.

that statement Dr. Emenecker opined that the Plaintiff was able to carry 50 pounds frequently and 100 pounds occasionally; sit five out of eight hours in a work day and two hours at one time; stand for three hours in an eight-hour work-day and one hour at a time; walk one hour at a time and one hour during an eight-hour work day; Plaintiff could climb ladders or scaffolds and crouch and crawl occasionally, as well as climb stairs and ramps, balance, stoop, and kneel frequently. (R. 31, 395-400.)

On July 2, 2014, Plaintiff presented to Presence Resurrection Medical Center ("Resurrection") complaining of acute onset low back pain occurring 3 days prior when lifting several 15 lb. bags at home. (R. 431.) At Resurrection, Plaintiff stated that he acquired Medicaid this year, was not on medication, and that he had laid down on the couch or bed for the majority of the last few days following his acute lifting injury. *Id.* Dr. David Remias saw Plaintiff at Resurrection and conducted a physical examination which demonstrated left paralumbar tenderness and limited range of motion (flexion 30 degrees and extension 20 degrees); strength at 4/5; good range in the straight leg raising test; tenderness in the lumbar spine; and normal reflexes. *Id.* Dr. Remias also noted that Plaintiff was obese.[3] *Id.* Dr. Remias diagnosed Plaintiff with lumbar pain, lumbar strain, and chronic lumbar radiculopathy, and sent Plaintiff for x-rays. (R. 432). Additionally, Dr. Remias prescribed Plaintiff Prednisone for his lower lumbar strain and advised that physical therapy start immediately, that Plaintiff avoid prolonged sitting or lying down, and to do gentle exercises for his back pain. *Id.* On July 7, 2014, Plaintiff was given his x-ray results from Dr. Remias, which showed "arthritis throughout spine and obvious disc collapse at L4-5." (R. 433.) Plaintiff told Dr. Remias he was improving (and indeed was less sore than on his July 2, 2014 visit to Dr. Remias), despite having fallen down the stairs the night prior. *Id.*

On July 17, 2014, Plaintiff appeared for a follow-up visit at Resurrection and saw Dr. Raman Singh, D.O. (R. 435.) Plaintiff told Dr. Singh that he did not initiate physical therapy because he

---

[3] This is the single mention of obesity in the entirety of the Administrative Record.

could not find the time to go. *Id.* Overall, Plaintiff stated that pain had improved, and he was now able to ambulate well, bend forwards and backwards without pain. *Id.* Plaintiff's flexion had increased to 60 degrees, extension stayed at 20 degrees, lateral rotation was up to 70 degrees, and his lateral bending was 40 degrees. *Id.* Dr. Singh also noted that Plaintiff was "very concerned with disability." *Id.*

On July 23, 2014, Plaintiff underwent a Functional Capacity Evaluation ("FCE") at Resurrection. (R 409-14.) Plaintiff participated in total of 3 hours of assessment activities and tasks during the FCE. (R. 413.) The attending examiner diagnosed Plaintiff with degenerative disc disease and back pain. (R. 409.) During the FCE, Plaintiff reported that he walked most places 4-5 blocks with small rest breaks, but displayed limited abilities indicative of deconditioning. (R. 410, 412.) The examiner noted that Plaintiff displayed decreased endurance and would benefit from a conditioning program, and Plaintiff was instructed to gradually increase his activities to improve his endurance. (R. 413.) The FCE examiner stated that Plaintiff was performing at the light strength-rating category for lifting during the evaluation; this rating was defined as exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly to move objects. *Id.* Plaintiff was able to tolerate total sitting for about 1 hour 35 minutes. *Id.* The longest period of continued sitting was for 35 minutes without observed or reported discomfort. *Id.* The longest period of continued standing was for 15 minutes. *Id.* Plaintiff rated his pain at 4/10 pre-evaluation and 5/10 post-evaluation. (R. 410, 412.) Plaintiff's self-rated perceived capacity score was 90, placing him below the ability to perform Sedentary strength work. (R. 410.) However, during testing, Plaintiff performed Light to Medium strength work, which was suggestive of symptom magnification, as he demonstrated greater capabilities than his ratings. *Id.* Clinical studies suggested that a heart rate increase in excess of 50% more than the resting rate during repetitive use of large muscles (*i.e.*, lifting) was indicative of maximal effort, but Plaintiff's heart rate

increased by only 23% during his FCE. (R. 412.) The FCE examiner observed that Plaintiff's perception of pain effect on functioning was exaggerated and that aspects of the examination were suggestive of symptom magnification. (R. 410-11, 413.) On this point, the examiner stated, "By that I am not implying any intent on his part. It is just that client's focus on pain limited his functions." (R. 413.) Based on the evaluation, the FCE examiner opined that Plaintiff was able to perform a light strength job. *Id.*

In addition to Dr. Emenecker's June 17, 2014 medical source statement, Dr. Singh also completed a medical source statement on August 11, 2014. (R. 402-408.) Dr. Singh opined that the Plaintiff was able to lift/carry 20 lbs. occasionally and 10 lbs. frequently; sit 90 minutes at a time and 4 hours in total during an eight-hour work day; stand 35 minutes at one time and two hours in total for an eight-hour work day; walk 15 minutes at one time and walk a total of 2 hours in an eight-hour work day; climb ladders or scaffolds occasionally; and kneel, crouch and crawl occasionally. *Id.* Dr. Singh further noted that Plaintiff "feels he cannot complete repetitive lifting, staying on knees and getting up." (R. 407.) Dr. Singh also opined that the functional assessment Plaintiff underwent at Resurrection on July 23, 2014 supported light work duty. (R. 407.)

On August 13, 2014, Plaintiff returned to Dr. Singh for another follow-up appointment. (R. 437.) Plaintiff told Dr. Singh his back pain had improved somewhat but he still had limitations with lifting heavy weights and standing/kneeling for long periods of time. *Id.* Dr. Singh again recommended that Plaintiff start physical therapy, but Plaintiff "states that he cannot start PT or OT until he gets his insurance taken care of as he currently does not have [M]edicare benefits." *Id.*

### B. The ALJ's Decision

On December 10, 2014, the ALJ issued a written decision denying the Plaintiff's DIB application. (R. 21-33.) As an initial matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. (R. 21.) Applying the five-step

7

sequential evaluation process pursuant to 20 C.F.R. § 404.1520(a), the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since October 15, 2012. (R. 23.) At step two, the ALJ determined that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine. *Id.* At step three, the ALJ found that Plaintiff's impairments did not meet the severity requirements of the listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 23-24.) Before step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC")[4] to perform light work as defined in 20 CFR 404.1567(b) and 416.967 (b). (R. 24.) The ALJ also found that Plaintiff's RFC included the ability to frequently climb ladders, ropes, scaffolds, ramps, and stairs, and to frequently stoop, crouch, and crawl. *Id.*

To support his RFC determination, the ALJ considered Plaintiff's symptoms as reported by Plaintiff to various medical professionals and the assessments of those medical professionals, as has been summarized in the 'Medical History' section of this Opinion, *supra*. The ALJ discussed the ME's testimony that Plaintiff "has greater abilities than he perceives and that his perception of pain is interfering with his functioning." (R. 30.) The ALJ further noted that after a comprehensive review of Plaintiff's medical record, the ME determined that Plaintiff "does have degenerative joint disease at the L4-L5 consistent with the diagnostic tests" and that "the evidence supports a light exertional level with the postural limitations reflected in the above residual functional capacity." *Id.*

In addition to those considerations, the ALJ also noted that he gave limited weight to the opinions of Dr. Julio Pardo, of the Disability Determination Services ("DDS"), who opined that the Plaintiff could do "less than light work, due to "postural limitations." (R. 32, 109-17.) The ALJ gave the September 17, 2013 DDS assessment limited weight because Dr. Pardo did not have the complete file in front of him when rendering the DDS opinion.[5] (R. 32.) The medical source

---

[4] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.
[5] The September 17, 2013 DDS opinion was made during the 9 month period between Plaintiff's two visits to Dr. Ememecker, early in Plaintiff's treatment history.

8

opinions of both Dr. Singh and Dr. Ememecker were given little weight because the "treatment notes of both doctors including the physical findings reported by both doctors do not support the rather extreme functional limitations provided nor are they supported by the FCE results or the improvement reported" by the Plaintiff. *Id.* The ALJ gave great weight to the ME's opinion because he gave a comprehensive file review at the hearing, and his opinion was supported by the medical evidence of record. *Id.* Lastly, the ALJ gave significant weight to the FCE examiner based on the "comprehensive assessment" of the Plaintiff conducted as part of the FCE. *Id.*

The ALJ also took into account Plaintiff's testimony at the Administrative Hearing. (R. 28-30.) The ALJ relied on the Plaintiff's own testimony that he was capable of walking the dog twice a day, volunteering at a food pantry where he carries things to customer's vehicles, doing chores such as taking out the garbage or sweeping, working at a dollar store for 10 hours a week, and walking to a friend's house five blocks away. (R. 31.) The ALJ found it noteworthy that since Plaintiff continued to apply for work after his alleged onset date and moved to Chicago due to lack of job opportunities where he lived prior, Plaintiff's "inability to obtain work, as opposed to the inability to perform work, may be a motivation behind the current [disability] application." *Id.* The ALJ also found it noteworthy

> that there are several references in the treatment notes the [Plaintiff] is focused in seeking disability benefits, but is often not compliant with treatment recommendations including consistently taking pain medication and remaining physically active. The [Plaintiff's] failure to adhere to these recommendations including failure to take medication that he had available suggests an unwillingness on his part to do whatever is necessary to improve his physical condition as well as suggesting that his symptoms may not be as intense and limiting as alleged.

(R. 31.) For these reasons, the ALJ found Plaintiff's testimony to be "partially credible." (R. 30-31.)

Given these findings, at step four, after considering the VE's testimony, the ALJ determined the Plaintiff "is capable of performing past relevant work as fast food worker as generally and actually performed; and sales associate as generally performed [as t]his work does not require the

9

performance of work-related activities precluded by the claimant's residual functional capacity." (R. 32.)

Finally, the ALJ found Plaintiff not disabled under the Act. *Id.*

## III. STANDARD OF REVIEW

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether he is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities he is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act, 20 C.F.R. §§ 404.1520(a) and 416.920(a), if it is supported by substantial evidence, and if it is free of legal error. 42 U.S.C. § 405(g). Substantial

evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Although we review the ALJ's decision deferentially, he must nevertheless build a "logical bridge" between the evidence and his conclusion. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

A "disabled" individual is one who "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which…has lasted or can be expected to last for a continuous period of no less than twelve months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). To qualify as disabled, a person's impairments must be so severe, that he is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exist in the national economy." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(B).

## IV. DISCUSSION

Plaintiff seeks judicial review alleging that: a) the ALJ failed to properly weight the treating physicians' opinion evidence; b) the ALJ failed to properly weigh the other opinion evidence; c) the ALJ erred by not properly assessing obesity; d) the ALJ's multiple errors with symptom evaluation compel reversal; and e) the ALJ erred by not properly preserving the record. (Dkt. 15, pp. 10-24.)

### A. The ALJ Failed to Appropriately Weigh the Medical Evidence

Because of a treating physician's greater familiarity with a claimant's condition and the progression of his impairments, a treating physician's medical opinion, it is "entitled to controlling weight if it is well supported by objective medical evidence and consistent with other substantial evidence in the record." 20 C.F.R. § 404.1527(d)(2); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (reference omitted).[6] On the other hand, while an "administrative law judge is not required to

---

[6] A recent change to the Administration's regulation regarding weighing opinion evidence has eliminated this rule, commonly known as the "treating physician rule," for new claims filed on or after March 27, 2017. Compare 20 C.F.R. 404.614 (for claims filed before March 27, 2017) to 20 C.F.R. 404.1520c (for claims filed on or after March 27, 2017). For the purposes of this appeal, however, the prior version of the regulation applies.

11

give a treating physician's opinion controlling weight, he is required to provide a sound explanation for his decision to reject it and instead to adopt another doctor's view." *Id; Campbell v. Astrue,* 627 F.3d 299 (7th Cir. 2010) (internal quotations omitted); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ does not need to rely on the treating physician's testimony, so long as the ALJ has given "good reasons" for not doing so. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). When an ALJ decides for "good reasons" not to give controlling weight to a treating physician's opinion, he must determine what weight to give to it and other available medical opinions in accordance with a series of factors, including the length, nature, and extent of any treatment relationship; the frequency of examination; the physician's specialty; the types of tests performed; and the consistency of the physician's opinion with the record as a whole. *Yurt v. Colvin*, 758 F.3d at 860; *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see, also*, 20 C.F.R. § 404.1527(c), 416.927(c). In general, a physician who has personally examined the claimant is given more credence than one who has only reviewed the medical file. 20 C.F.R. § 404.1627(c)(1). The ALJ cannot disregard the medical evidence as a whole from the treating physician, but is required to address conflicts in evidence. *Scrogham v. Colvin,* 765 F.3d 685, 697 (7th Cir. 2014); *Richardson v. Perales*, 402 U.S. 389 (1971) ("trier of fact has the duty to resolve conflicting medical evidence").

Here, the ALJ discounted the medical source opinions of both Dr. Singh and Dr. Ememecker because the ALJ felt these opinions were not corroborated by office notes and objective findings. (R. 32.) Specifically, the ALJ gave the opinions of these treating physicians little weight because the "treatment notes of both doctors including the physical findings reported by both doctors do not support the rather extreme functional limitations provided nor are they supported by the FCE results or the improvement reported" by the Plaintiff. *Id.*

The correct legal standard when evaluating a treating physician's opinion is whether the opinion is "well supported by objective medical evidence" and "not inconsistent" with other

substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Roddy*, 705 F.3d at 636. Here, the ALJ identifies two "inconsistencies." First, the ALJ points to the FCE as not supporting the limitations. Second, the ALJ points to reports of improvement by the Plaintiff as not supporting the limitations. However, as to both of these, the ALJ does not point to any specific FCE result or claim of improvement that is inconsistent, but instead makes a general assertion that the FCE results and reported improvement "do not support the rather extreme functional limitations." (R. 32.) The Court is left wondering which aspect of the FCE is inconsistent with the doctors' limitations, or which claim of improvement by the plaintiff the ALJ is even referring to as inconsistent with the limitations listed by these physicians.

    i. **The FCE**

As to the FCE, the ALJ did not explain, for example, why he found Dr. Singh's opinion that Mr. Behrens would be limited to lifting and carrying up to 20 pounds occasionally and lifting and carrying up to ten pounds frequently not supported by the FCE. (R. 32, 402.) These lifting and carrying capacities match the FCE results relied upon by Dr. Singh as supporting the his assessment of Plaintiff's lifting and carrying capacity at the light level. (R. 32, 402-03, 413-14.) The ALJ's own functional capacity finding was that the Plaintiff has the capacity to perform light work. (R. 24.) Likewise, the ALJ did not explain why Dr. Singh's opinion that Plaintiff could: stand for 35 minutes continuously, walk for 15 minutes at a time, and sit for 90 minutes at one time; and sit for 4 hours in an eight hour day, stand for two hours total in an eight hour workday, and walk for two hours total in an eight hour workday was not supported by the FCE. (R. 403.) These walking, sitting, and standing capacities opined to by Dr. Singh exceeded the FCE testing where Plaintiff's longest period of walking was ten minutes, his longest period of standing was twelve minutes, and he sat for 35 minutes continuously for a total of one hour and thirty-five minutes sitting. (The FCE did not evaluate Plaintiff's total standing and walking capacities. (R. 412.)) Dr. Singh also opined that Mr.

13

Behrens could: continuously climb stairs and ramps, stoop, and balance; and occasionally climb ladders and scaffolds, kneel, crouch, and crawl. (R. 405.) Dr. Singh's opinion of Plaintiff's ability to climb ramps and stairs and stoop is greater than the ALJ found in his own functional capacity finding (the ALJ did not make a finding of ability to balance). (R. 24, 405.) Although Dr. Singh opined that Plaintiff could climb ladders and scaffolds, kneel, crouch, and crawl for more than two and one-half hours during the day which was less than the ALJ's finding that Plaintiff could engage in these activities for more than five hours during the day. *Id.* On these points, Dr. Singh's opinion is, in fact, in accord with the FCE assessment that Plaintiff could kneel for four minutes and had difficulty stooping. (R. 24, 405, 412.) Basically, the ALJ gave Dr. Singh's opinion little weight because it was allegedly unsupported by the FCE, but this is clearly not true in all respects. Dr. Singh's allegedly "extreme" limitations were also more permissive than the ALJ in some cases. It appears the ALJ impermissibly selectively considered Dr. Singh's opinions as compared to the FCE (again, without identifying which specific opinions conflicted with which specific parts of the FCE). *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (The ALJ "may not selectively consider medical reports, especially those of treating physicians…"); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) ("Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected."). These same criticisms can be levied against the ALJ with regards to Dr. Emenecker's opinions, as the ALJ similarly failed to identify which specific opinions of Dr. Emenecker conflicted with which specific parts of the FCE. It is impossible from the ALJ's opinion to tell which of Dr. Singh's or Dr. Emenecker's opinions are being evaluated for consistency to the rest of the evidence in the record, including the FCE. 20 C.F.R. § 404.1527(d)(2); *Roddy*, 705 F.3d at 636 (treating physician's medical opinion entitled to controlling weight if "well supported by objective medical evidence and consistent with other substantial evidence in the record.")

Even if the ALJ had cited sound reasons for refusing to give Dr. Singh's and Dr. Emenecker's assessments controlling weight, the ALJ still had an obligation to determine what value these assessments did merit. 20 C.F.R. § 404.1527(c)(2). In making the determination to discount a treating physician, the SSA regulations require the ALJ to consider a variety of factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(d)(6); *Harris v. Astrue*, 646 F. Supp. 2d 979, 999 (N.D. Ill. 2009). Here, some of these factors may indeed *not* have supported giving controlling weight to either of these physicians' opinions, as Plaintiff had what might fairly be characterized as a limited and sporadic treatment history with either physician and both Drs. Emenecker and Singh are doctors of osteopathy (as opposed to back or spine specialists, for example)[7] (R. 400, 407). Nevertheless, there is no indication that the ALJ considered these required factors in assigning little weight to the opinions of Drs. Emenecker and Singh, either explicitly or implicitly. As such, the ALJ's decision is insufficient.

### ii. Reports of Improvement by Plaintiff

Likewise, the ALJ's references to reported improvements by the Plaintiff is similarly vague and insufficient to support his discounting of the medical source opinions of both Dr. Singh and Dr. Ememecker. The ALJ does not detail which reported improvements he relies on to discount the doctors' opinions (nor are many to choose from in the ALJ's opinion or in the record as a whole). Moreover, there is only one self-report of improvement (and it is troublesome at that) related to Dr. Emenecker.

---

[7] A doctor of osteopathy is a general practitioner who has been trained in the "school of medicine based on a concept of the normal body as a vital machine capable, when in correct adjustment, of making its own remedies against infections and other toxic conditions; practitioners use the diagnostic and therapeutic measures of conventional medicine in addition to manipulative measures." *Stedman's Medical Dictionary*, 638330 (osteopathy).

15

The ALJ mentions that on March 18, 2014, Plaintiff reported to Dr. Emenecker "that his thighs had been doing better" (R. 26, 421), but this says nothing about Plaintiff's degenerative disc disease of the lumbar spine. The ALJ also ignores the next sentence in the record after this, which details Dr. Emenecker's note that Plaintiff "does not have as much trouble with those [his thighs], but his back still bothers him." (R. 421.) "The ALJ was not permitted to 'cherry-pick' from those mixed results to support a denial of benefits." *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). Moreover, this is the only "improvement reported" by the Plaintiff to Dr. Emenecker, which strikes the Court as a faulty reason for the ALJ to afford Dr. Emenecker's opinion little weight. The ALJ should not have lumped together his reasons for disregarding both physicians' opinions, and this is a perfect illustration of why not.

The ALJ also references Plaintiff's report of July 7, 2014 to Dr. Remias (not Dr. Emenecker or Dr. Singh) that he had "been feeling a bit better" since starting his course of steroids (R. 27, 433) until he fell down some stairs, but the ALJ also notes that this acute tailbone pain had later fully resolved. (R 27, 66, 435, 437). The ALJ also notes that on July 17, 2014, immediately after Plaintiff's course of steroids, on his first-ever visit to Dr. Singh, Dr. Singh noted: "[o]verall, [Plaintiff] stated that pain had improved. He was now able to ambulate well, bend forwards and backwards without pain." (R. 27, 435.) Lastly, one month after his course of steroids, on August 13, 2014, Plaintiff reported to Dr. Singh "that his back pain has improved somewhat with rest…" (R. 28, 437.) Here, not only has the ALJ failed to pinpoint to which of these two reports of improvement to Dr. Singh might be inconsistent with which aspects of Dr. Singh's "extreme functional limitations", but even if these improvement reports were indeed inconsistent, that may not be a reason to discount Dr. Singh's entire opinion. *See Fischer v. Barnhart*, 256 F. Supp. 2d 901, 907 (E.D. Wis. 2002) (fact that one part of treating physician's note was inconsistent with certain limitations does not make that physician's record as a whole inconsistent). It was incumbent on the ALJ to detail these

inconsistencies before discounting the opinion of Dr. Singh.

Again, it is impossible to tell which reports of improvement the ALJ has identified as inconsistent with which "extreme functional limitation" opined about by which doctor. Thus, it is impossible to even evaluate whether Dr. Singh's or Dr. Emenecker's opinions are "not inconsistent" with other substantial evidence (in this case, self-reports of improvement) in the record. 20 C.F.R. § 404.1527(d)(2). As such, the ALJ's decision is insufficient.

## V. CONCLUSION

The Court reverses and remands with instructions for the ALJ to provide good reasons, if any, to discount the Plaintiff's treating physicians' evidence. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's opinion as raised by the Plaintiff in Docket No. 15.

Plaintiff's Motion to Reverse the Final Decision of the Commissioner of Social Security (dkt. 15) is granted. The Commissioner's Motion for Summary Judgment (dkt. 22) is denied.

Entered: 9/13/2017

_____

U.S. Magistrate Judge, Susan E. Cox